(112 App. Div. 313)

### In re WATERMAN'S ESTATE.

(Supreme Court, Appellate Division, Second Department. April 27, 1906.)

1. EXECUTORS—DUTIES—TRANSACTION OF BUSINESS.

Where testator appointed three executors, one of whom was his daughter, the other two were not bound to transact business pertaining to the estate in the presence of the daughter's son, who was her personal attorney, and who made himself obnoxious to such executors.

2. SAME—GROUND FOR REMOVAL.

The refusal of such executors to transact business of the estate in the presence of such attorney was not ground for their removal at the instance of the daughter, in the absence of a showing that the estate was suffering in any manner from their acts.

3. APPEAL—RECORD—CASE—ADMISSIONS.

In proceedings for the removal of executors no evidence was taken. The decree of removal was made on the pleadings and admissions of counsel. All the facts found by the surrogate did not support such decree, and the record declared that it contained all the evidence taken or given on the trial of the proceeding. Held, that the fact that the admissions did not appear as a part of the case made and settled, as provided by Code Civ. Proc. § 2576, did not preclude defendants from a review of the facts on appeal.

Appeal from Surrogate's Court, Kings County.

Petition by Julia Kenyon for the revocation of letters testamentary, issued to Henry M. Waterman and Samuel H. Coombs. From a surrogate's decree removing such executors, and directing them to deliver the assets of the estate to petitioner, they appeal. Reversed.

Argued before JENKS, WOODWARD, HOOKER, GAYNOR, and RICH, JJ.

Robert H. Wilson, for appellants.

Thaddeus D. Kenneson (Ralph W. Kenyon, on the brief), for respondent.

WOODWARD, J. Henry Waterman died, leaving a last will and testament, which was duly admitted to probate in the county of Kings; letters testamentary being issued to Julia Kenyon, Henry M. Waterman, and Samuel H. Coombs, the executors named in such will, on the 21st day of October, 1904. Each of said executors qualified and entered upon the discharge of the duties of his office. In July, 1905, Julia Kenyon filed her petition and affidavit asking that a citation be issued requiring Henry M. Waterman and Samuel H. Coombs to show cause why a decree should not be made revoking the letters testamentary

issued to them, and on July 15, 1905, a citation was issued requiring them to show cause why the letters testamentary issued to them upon the estate of Henry Waterman should not be revoked, as prayed in said petition. The citation was duly served upon the parties mentioned, and upon the return day of the citation the surrogate removed the executors, basing such removal upon the petition of the said Julia Kenyon, her affidavit, and the answers of Samuel H. Coombs and Henry M. Waterman, as construed by the said surrogate upon counsel's statement of the contents of such answer. Subsequently the learned surrogate made findings of fact and conclusions of law, passing upon proposed findings of fact and conclusions of law presented in behalf of Messrs. Coombs and Waterman, and on the 31st of July, 1905, entered his decree removing Samuel H. Coombs and Henry M. Waterman, and directing that they file and judicially settle their accounts, and also directing them to turn over to Julia Kenyon all assets of the deceased in their possession. Exceptions to the findings of fact and conclusions of law were filed by counsel, and exceptions were likewise filed to the surrogate's refusals to find proposed findings of fact and conclusions of law, and appeal comes to this court upon the record thus made up from the decree of the surrogate removing such executors.

It appears from the pleadings in this case, no evidence being taken (the learned surrogate reaching a determination to dismiss the two executors upon the statement of counsel of the contents of their answers), that the difficulty between the two executors who have been removed and the one upon whose petition such action was taken arises from the fact that Julia Kenyon, a daughter of the testator, insists on bringing her son, Ralph W. Kenyon, into all meetings of the executors, and the other two executors, because of the offensive conduct of the said Ralph W. Kenyon, have refused to act with the same Julia Kenyon in the presence of her son. The broad question is thus presented whether the mere fact that the two executors refuse to act in their capacity of executors in the presence of a person in nowise related to the office of executor, and whose conduct toward them is concededly offensive, is a sufficient justification for their removal, under the provisions of section 2685 of the Code of Civil Procedure; whether one of three executors named in the will of a testator may intrude her personal attorney into the affairs of the estate, regardless of the other two, thus bringing about a situation not contemplated by the language or the spirit of the will. We are clearly of opinion that Julia Kenyon had no such right under the circumstances, and that the two executors had a perfect right to refuse to conduct the affairs of the estate under the personal supervision of Ralph W. Kenyon. The law of this state permits a testator to nominate and appoint one or more executors. When this power is exercised, and more than one individual is named, the testator says, in effect, that he is unwilling to trust the carrying out of his desires to one individual, but that he intrusts it to the harmonious action of those whom he names; that while there are reasons why he desires the services of each, he is unwilling that any one of them should be controlling; that he desires his estate administered, not by the arbitrary will of one, but by the will of all, as modified and matured by mutual consultation. One of them may be venture-

some and aggressive, another timid, and a third the embodiment of courage and decision, and it is the combined qualities of these individuals which he desires in his executor, for in contemplation of law there is but one executor, no matter how many individuals may be involved. 18 Cyc. 1330. The testator calls together those whose judgment, integrity, and business capacity command his approval, and says to them, in effect:

"I want you to join with each other in determining all questions arising under my will; the manner of dealing with my estate. I do not want the arbitrary judgment of any one of you, but the harmonious action of all in administering my estate, and producing the best results for my creditors and beneficiaries."

Obviously in such a scheme there is no place for the personal attorney of any one of these executors. The testator, if he had desired the services of four persons, rather than three, would have provided for it in his will; and, not having done so, and the several executors having accepted the trust as fixed by the testator, each has a right to insist that no one shall be admitted to their deliberations except those named by the testator. That is the fair intention of the testator as expressed in his will, and the intent of the testator in this, as in other respects, should control where it is in harmony with the law. The executors as a body would have an undoubted right to employ counsel if it became necessary, and it is not to be doubted that each individual executor would have the right to have the advice of counsel as to his or her individual duty in respect to the estate; but none of them has an absolute right to intrude his or her personal counsel into the meetings of the executors, for that would, in effect, be substituting the counsel for the individual named in the will, and the testator did not contemplate any such situation. In the present instance Julia Kenyon was one of two daughters of the testator; the other being incompetent. Henry M. Waterman is Julia Kenyon's brother, and is one of the executors named in the will, while the third member of the board of executors is Mr. Coombs, for years the personal counsel of the testator. The testator desired that his estate should be administered by his competent children to the extent that they should be in a position to look after their own interests, but he was likewise desirous of protecting his incompetent daughter against any selfish purposes on the part of the others, and to this end Mr. Coombs was made a third testator (at least, we may assume these to have been the considerations); and to remove two of these executors, and place the estate in the control of a single person, simply because the other two executors, who appear to be in perfect harmony, refuse to submit to the conduct of Julia Kenyon's son, is to defeat the very purpose which the testator had in mind in appointing three persons to administer his estate, and can be justified only upon the ground that the estate is suffering by reason of the disagreement of the executors. There is nothing in the record before us, which "contains all the evidence taken or given on the trial of this proceeding," which justifies the conclusion that any interest of the estate has suffered because of the refusal of the majority of the executors to transact the business of the estate in the presence of the personal counsel of Julia Kenyon, and the rule is well settled that, while the court may remove an executor who has unfriendly relations with a

coexecutor, if the interests of the estate are thereby jeopardized, such remedy will not be applied merely because there is a disagreement between them, or to gratify the malice or bad feeling of one against the other. 11 Am. & Eng. Ency. of Law, 824, and authorities cited in note 1. Neither of the executors who have been removed has refused to transact business with Julia Kenyon, the person whom the testator named as a coexecutor with them; they have simply declined to transact business with her in the presence of a person who is an entire stranger to the board of executors as created by the will under which they are acting, and, as we have already pointed out, they had a perfect right to do this. Julia Kenyon might refuse to act unless she was permitted to have her personal counsel present; she might refuse to act for any reason which pleased her; but she has no right to the removal of her coexecutors simply because they do not choose to act in the presence of one who appears to have been an active disturber of the harmony of the executors.

Viewing the question broadly (and it is the one which goes to the merits of this controversy, and appears necessary to the welfare of the estate), we are of opinion that the learned surrogate has erred in the exercise of the discretion vested in the court, and that the decree cannot stand. It defeats the lawful purpose of the testator to have his estate administered by persons of his own choosing, and does not promise any advantage to any of the material interests of the estate or of those beneficially interested.

Counsel for the petitioner urges that there are no questions of fact open for review upon this appeal, as it is suggested that the learned surrogate, in determining upon the return day of the order to show cause that the two executors should be removed, found the facts upon the pleadings and upon admissions of counsel in open court, and that these admissions do not appear as a part of the case made up and settled by the surrogate, as provided by section 2576 of the Code of Civil Procedure. We are of opinion, however, that, no evidence having been taken, and the record before us declaring that it contains all of the evidence taken or given on the trial of this proceeding, the exceptions to the findings of fact and conclusions of law and the exceptions to the refusal of the surrogate on the return day that he would remove the executors before making the findings and conclusions, could hardly be permitted to defeat the right of the appellants to a review of the facts as found by the learned surrogate afterward. But we do not think it necessary to review the facts as found by the learned surrogate, or his refusals to find, for the reason that, if all of the facts are just as he has found them, it does not justify the decree. Before executors duly nominated and appointed by a testator can be properly removed, it must be shown upon a fair trial that the interests of the estate, as distinguished from the caprice of an individual executor, are jeopardized; and a careful examination of the alleged facts in this case, many of which are not supported by admissions or by evidence of any character, fails to show such a situation.

The decree should be reversed.

Decree of the Surrogate's Court of Kings County reversed, without costs. All concur.